**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
UNITED STATES OF AMERICA           :
            :
            :
            :    02 Cr. 673 (RMB)
    -against-         :
            :    **DECISION & ORDER**
GAYA GAYATRINATH, et al.,       :
            :
        Defendants.     :
------------------------------------------------------------X

## I.    Introduction

Before the Court is a motion, filed March 12, 2010 by Defendant Gaya Gayatrinath

("Defendant"), a United States citizen, to dismiss Superseding Indictment S4 ("Indictment") on

speedy trial grounds.  See U.S. Const. amend. VI.  The Indictment, filed April 28, 2003, charged

Defendant and 14 others with bank fraud in violation of 18 U.S.C. § 1344; conspiracy to commit

bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. § 371; and conspiracy to commit

money laundering in violation of 18 U.S.C. § 1956(h), all in connection with "a fraudulent

scheme to obtain hundreds of millions of dollars in loans from numerous major banks."

(Indictment ¶ 36.)

In 2003 and 2004, 7 of Defendant's alleged co-conspirators pleaded guilty before this

Court, and, on May 12, 2004, 5 others were convicted following a three week jury trial.[1]  On

April 22, 2008, 3 other alleged co-conspirators were convicted by a jury in London, England of

conspiracy to defraud.  See Press Release, United Kingdom's Serious Fraud Office, dated June 5,

2008 ("U.K. Press Release"), available at http://www.sfo.gov.uk/press-room/latest-press-

---

[1]    On various dates in 2004, 2005, and 2008, these 12 defendants were sentenced by this
Court.  (See, e.g., Sentencing Judgment as to Josielynn Salumbides [#287], dated Aug. 25, 2004
(63 months' imprisonment); Sentencing Judgment as to Narendra Kumar Rastogi [#402], dated
Mar. 6, 2008 (84 months' imprisonment).)

releases/press-releases-2008/rbg-resources-plc-former-directors-jailed-for-$700m-worldwide-fraud.aspx.

In his motion, Defendant argues that he was denied his Sixth Amendment right to a speedy trial because, among other reasons, while U.S. prosecutors initiated extradition proceedings in India and requested Defendant's arrest there even before Defendant's Indictment in April 2003, they "did not diligently follow-up" on those actions.  (Def.'s Mem. of Law in Supp. of Mot., dated Mar. 11, 2010 ("Def. Mem."), at 4, 13.)

On June 14, 2010, the Government filed an opposition to the instant motion, arguing, among other things, that (1) the Court should decline to hear Defendant's motion under the "fugitive disentitlement doctrine"; and (2) "much of the delay is attributable to [Defendant's] decision to contest extradition."  (Govt.'s Opp'n to Mot., dated June 14, 2010 ("Opp'n"), at 2, 13, 14–15.)

On June 25, 2010, Defendant filed a reply.  (Def. Reply Mem. of Law, dated June 25, 2010 ("Def. Reply").)

**For the reasons set forth below, Defendant's motion is denied.**

II.    **Background**

On May 6, 2002, Defendant traveled from the United States to India "upon hearing that [his] father had died" in India on May 4, 2002.  (Affidavit of Def., dated Feb. 15, 2010 ("Def. Aff."), ¶ 4 & Ex. 1.)  Pursuant to a sealed criminal complaint filed in this Court on May 13, 2002, the United States, on or about January 13, 2003, "sent a request to the Government of India for the provisional arrest of [Defendant] for purposes of his extradition."  (Decl. of David P. Warner in Supp. of Govt., dated June 11, 2010 ("Govt. Decl."), ¶ 4; see Docket Entry #1 in 02 Cr. 673.)  Although Defendant allegedly learned about the April 2003 Indictment "from

newspapers in India" (Def. Aff. ¶ 5), he did not return to the United States to defend the charges against him because, he asserts, Defendant "decided to take <u>ayurveda</u> treatment" for asthma and diabetes, and because "he found solace in . . . observing, along with [his] brother, the year-long Hindu religious [rites] for [his] deceased father" (Def. Aff. ¶¶ 4–6.)

As noted, while the Government's request for Defendant's provisional arrest was still outstanding, the Court presided over a jury trial from April 19, 2004 to May 12, 2004 of six persons indicted along with Defendant.  The jury found five of these defendants guilty of conspiracy to commit bank fraud, mail fraud, wire fraud, and money laundering.  (It acquitted one defendant.)  (<u>See</u> Jury Verdict, dated May 12, 2004.)  The London jury referred to above convicted three others of "conspiracy to defraud."  <u>See</u> U.K. Press Release.

On September 9, 2004, Indian officials arrested Defendant pursuant to the U.S. provisional arrest request.  (<u>See</u> Govt. Decl. ¶ 4.)  Defendant initially stated in an application to the Indian courts, dated September 14, 2004, that he was "ready and willing to appear before the Federal Court, South[ern] District of New York."  (Def. Aff. Ex. 9, at 2.)  "On December 1, 2004, the United States submitted a formal extradition request to the Government of India [for Defendant's] extradition for conspiracy to commit bank fraud, mail fraud, and wire fraud, along with conspiracy to commit money laundering."  (Govt. Decl. ¶ 6.)  In support of this request, the United States also submitted a diplomatic note to the Indian Government.  This note did not mention the money laundering charges brought in the Indictment.   (Govt. Decl. ¶ 6.)  On March 16, 2005, "India agreed to extradite [Defendant], but only for charges relating to conspiracy to commit bank fraud, mail fraud, and wire fraud."  (Govt. Decl. ¶ 7.)  In response, the United States, on March 22, 2005, "requested that the Government of India amend its decision and agree to extradite [Defendant] for money-laundering charges as well.  On March 24, 2005, the

Government of India complied with the U.S. request and included the money laundering charges as extraditable offenses." (Govt. Decl. ¶ 8.)

Upon learning of the Indian Government's March 24, 2005 decision to extradite Defendant for all charges brought in the Indictment, Defendant filed papers in the Indian courts arguing that the Government is not "justified in including the . . . charge in relation to conspiracy to commit money laundering." (Def. Aff. Ex. 24; see also Govt. Decl. ¶ 9.) Since then, Defendant has fought the Government's efforts to extradite him. (See, e.g., Def. Aff. ¶¶ 25, 38 & Exs. 24, 30.) On January 12, 2009, Defendant prevailed in a court in New Delhi which determined "nothing on record which can be legally read against [Defendant] to state that a prima facie case is made out in support" of the United States's extradition request. (Def. Aff. Ex 30.) It appears that a petition by the United States challenging this ruling is pending. (See Def. Aff. ¶ 39; Decl. of Def., dated June 24, 2010, ¶ 6; Opp'n at 7 n.3.)

## III.   Analysis

### Fugitive Disentitlement Doctrine

Pursuant to the "fugitive disentitlement doctrine," which "provides that the fugitive from justice may not seek relief from the judicial system whose authority he or she evades," In re Grand Jury Subpoenas, 179 F. Supp. 2d 270, 285–86 (S.D.N.Y. 2001) (internal quotation marks omitted), the Court declines to consider Defendant's motion, see United States v. Mann, No. S4 00 Cr. 632, 2003 WL 1213288, at *1 (S.D.N.Y. Mar. 17, 2003). "A person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges." United States v. Blanco, 861 F.2d 773, 779 (2d Cir. 1988); see Grand Jury Subpoenas, 179 F. Supp. 2d at 287; Mann, 2003 WL 1213288, at *1. The Court "see[s] no reason to entertain the cause of one who will respond to a judgment only if it is

favorable." Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 280–82 (2d Cir. 1997) (internal quotation marks omitted).

While Defendant claims that the fugitive disentitlement doctrine does not apply to him because he consented to extradition in September 2004 (see Def. Aff. ¶ 13), the Court notes that Defendant subsequently withdrew this consent and, as noted, has resisted the Government's efforts to extradite him, see Blanco, 861 F.2d at 779; United States v. Gorcyca, No. 09 Cr. 9, 2008 WL 4610297, at *2 (E.D.N.Y. Oct. 16, 2008). And, notwithstanding defense counsel's assertion that Defendant is "basically . . . marooned in India" (Def.'s Ltr. to the Ct., dated Feb. 23, 2011; see Def. Reply at 3), the Court is aware of no legal impediment to Defendant's voluntary return to the United States to face the charges in the Indictment.

Because Defendant, a U.S. citizen, has "fail[ed] to return to the [United States] to face the charges" against him, he is a fugitive, Grand Jury Subpoenas, 179 F. Supp. 2d at 287, and the fugitive disentitlement doctrine is applicable against him.

**Speedy Trial**

Even if the fugitive disentitlement doctrine did not apply, the Court would conclude, as shown below, that Defendant's constitutional right to a speedy trial has not been violated. Defendant has not met his burden under Barker v. Wingo, 407 U.S. 514 (1972), in which the Supreme Court "identified the four familiar factors that must be considered to determine whether a defendant's right to a speedy trial has been violated:  [a] the length of the delay between the defendant's indictment and trial, [b] the reason for the delay, [c] when the defendant asserted the right, and [d] the prejudice defendant suffered due to the delay." United States v. Blanco, 861 F.2d 773, 777 (2d Cir. 1988).  Defendant "has the burden at least to submit evidence that, if credited, would establish that the Barker factors weigh in his favor." United States v. Stone, 510

F. Supp. 2d 338, 343 (S.D.N.Y. 2007) (citing United States v. Lane, 561 F.2d 1075, 1079 (2d Cir. 1977)).

**(a) Length of the Delay**

Defendant and the Government acknowledge that no trial of Defendant has yet been held and that the delay between indictment and the filing of Defendant's motion – approximately seven years – triggers an inquiry into the other three Barker factors.  (See Def. Mem. at 3; Opp'n at 19); Garcia Montalvo v. United States, 862 F.2d 425, 426 (2d Cir. 1988) (per curiam).

**(b) Reason for the Delay**

The Court finds that the actions taken by Defendant are the primary cause for any delay in commencing a trial, see Blanco, 821 F.2d at 778 ("A defendant's claim that the government violated her right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay."), as follows:

**April 23, 2003 to September 4, 2004**

Defendant asserts that he learned of the charges in the Indictment while in India.  (See Def. Aff. ¶ 5.)  The Court finds that he has chosen to remain there for personal reasons – and chooses to remain in India to this day.  (See Def. Aff. ¶¶ 4–6.)  The (approximate) 17 month period between Defendant's Indictment and his arrest in India is "chargeable" to him.  United States v. Carpenter, 542 F.2d 1132, 1134 (9th Cir. 1976); see Stone, 510 F. Supp. 2d at 343 (government "under no obligation to attempt to mount a manhunt in a sovereign nation in an effort to assist [foreign] authorities in executing their provisional arrest warrant"); Rayborn v. Scully, 858 F.2d 84, 90–91 (2d Cir. 1988) ("[A] state is perfectly entitled to rely in good faith upon the efforts of another jurisdiction when a suspect . . . absconds to that other jurisdiction.").

**September 5, 2004 to March 24, 2005**

The period between the Indian Government's provisional arrest of Defendant on September 4, 2004 and the Indian Government's decision on March 24, 2005 to extradite Defendant for all charges brought in the Indictment does not support Defendant's speedy trial application because the United States exercised due diligence in attempting to facilitate Defendant's extradition to the United States.  This due diligence included securing an arrest warrant in India (and in the United States), providing information to assist the Indian Government in locating Defendant, making a formal request for extradition, and responding to Defendant's challenges to extradition.  (See Govt. Decl. ¶¶ 5–10; Arrest Warrant as to Def. [#68], filed Apr. 28, 2003); see Garcia Montalvo, 862 F.2d at 426 ("The [government's] filing of [a] warrant [for defendant's arrest in the country where defendant was a fugitive] satisfied the government's constitutional duty to make a good-faith effort to return [defendant] from [that country]."); Rayborn, 858 F.2d at 91; United States v. Perez-Cestero, 737 F. Supp. 752, 764 (S.D.N.Y. 1990).

While the Government's "inadvertent" omission in its diplomatic note, dated December 1, 2004, of the money laundering charge may have resulted in an 8 day gap, i.e., from March 16, 2005 to March 24, 2005 (see Warner Aff. ¶¶ 7–8; Def. Aff. Ex. 19), this (negligible) "delay" certainly was not orchestrated for the purpose of gaining "tactical advantage."  Barker, 407 U.S. at 531 n.36; see Rayborn, 858 F.2d at 91 ("[N]egligent delays, although still a factor to be considered, should be weighed less heavily against the government than deliberate delays intended to hinder the defense.").

**March 25, 2005 to Present**

Any delay following the Indian Government's March 24, 2005 decision to extradite Defendant, the New Delhi court's January 12, 2009 decision to bar such extradition, and the present time, is attributable to Defendant's "own conduct in . . . fighting the extradition process" and/or refusing to return to the United States voluntarily.  United States v. Paul, 326 F. Supp. 2d 382, 387 (E.D.N.Y. 2004); United States v. Cruz, 907 F. Supp. 87, 93 (S.D.N.Y. 1995).

**(c) Assertion of Speedy Trial Right**

Prior to Defendant's March 12, 2010 motion, Defendant never asserted his right to a speedy trial before this Court (or, to the Court's knowledge, any other court).  Defendant's (initial) consent to extradition in September 2004 (see Def. Aff. ¶ 13 & Ex. 9) and his (undocumented and unclear) request on March 4, 2005 to "stop further [extradition] proceedings before the Delhi magistrate" (Def. Aff. ¶ 26) cannot – particularly in view of Defendant's six (plus) year campaign to avoid returning to the United States for trial – be said to have "plainly placed the Government on notice that the speedy trial issue was being preserved by the accused and would be pressed," Strunk v. United States, 412 U.S. 434, 436 (1973); see also Hakeem v. Beyer, 990 F.2d 750, 766 (3rd Cir. 1993) (when a defendant is represented by counsel, he should identify "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success.").  And, the letter, dated September 10, 2004 and addressed "To Whom It May Concern" by Gerald J. McMahon, Esq., makes no mention of Defendant's speedy trial concerns, if any.  (See Def. Aff. Ex. 4.)[2]  "This is thus not an

---

[2]   This letter from Mr. McMahon does not appear ever to have been filed with this Court prior to its submission along with Defendant's February 15, 2010 Affidavit.  Mr. McMahon first entered a notice of appearance on Defendant's behalf on March 9, 2010.

instance where the defendant has 'repeatedly and energetically asserted his rights." Garcia

Montalvo, 862 F.2d at 426 (citation omitted); see Rayborn, 858 F.2d at 92.

**(d) Prejudice**

Defendant does not demonstrate that he was prejudiced by delay because: (i) he offers no

evidence of actual prejudice; and (ii) the cause of any delay is attributable to Defendant, not the

Government.  See United States v. Ghailani, -- F. Supp. 2d --, No. 98 Cr. 1023, 2010 WL

2756546, at *13, *16–17 (S.D.N.Y. 2010).

First, "evidence of actual prejudice is quite important unless the other factors weigh

heavily against the government."  United States v. Ghailani, -- F. Supp. 2d --, No. S10 98 Cr.

1023, 2010 WL 2756546, at *17 (S.D.N.Y. July 12, 2010); see Blanco, 861 F.2d at 780

(rejecting "general" claim of prejudice).  Although Defendant speculates that "banks may no

longer be under any legal obligation to preserve relevant documents" and that "bank employees

that dealt with [Defendant's] company may have retired, or joined another bank" (Def. Mem. at

12), and, thus, presumably that evidence may be difficult to obtain, the mere "possibility of

prejudice is not sufficient to support [a defendant's] position that [his] speedy trial rights were

violated."  United States v. Loud Hawk, 474 U.S. 302, 315 (1986); see United States v. McGrath,

622 F.2d 36, 41 (2d Cir. 1980) (defendant failed to show "specific and substantiated" prejudice

arising from delay).  "[M]oreover, delay is a two-edged sword.  It is the Government that bears

the burden of proving its case beyond a reasonable doubt.  The passage of time may make it

difficult or impossible for the Government to carry this burden."  Loud Hawk, 474 U.S. at 315.

Second, Defendant does not demonstrate prejudice because "the Speedy Trial Clause,

like other provisions of the Bill of Rights, requires a causal connection between the government

conduct complained of and the alleged infringement of the values it protects."  Ghailani, 2010

9

WL 2756546, at *13. As noted, the delay here has been caused by Defendant's decision to remain in India. See Blanco, 861 F.2d at 780 ("We are not likely to be easily persuaded by the complaint of [a defendant] that she was prejudiced by delay when the [defendant] caused the delay.").

In sum, coming from a fugitive, Gayatrinath's claim that his right to a speedy trial has been denied carries almost no weight, see Blanco, 861 F.2d at 780, because "it is manifestly apparent that [Defendant] has no serious interest in the speedy prosecution of the charges against him," Rayborn, 858 F.2d at 92.

Defendant's motion [#453] is denied.

Dated: New York, New York
       March 11, 2011

RMB

_____
RICHARD M. BERMAN, U.S.D.J.

10